**DAWSON INDUSTRIES, INC., Plaintiff,**

**v.**

**AFFILIATED FM INSURANCE COMPANY, Defendant.**

**No. 91 Civ. 7377 (RLC).**

United States District Court,
S.D. New York.

Nov. 17, 1992.

---

**328**

Mason, Reich & Shore, New York City, for plaintiff; Joseph Pomeranz, of counsel.

Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ, for defendant; Thomas V. Hildner, Ruth V. Simon, Marianne C. Tolomeo, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Dawson Industries, Inc. ("Dawson") is a Georgia corporation which operates Almark Mills, an apparel manufacturing plant in Dawson, Georgia, and which is authorized to do business in New York. Dawson was insured by defendant Affiliated FM Insurance Company ("Affiliated"), a Rhode Island corporation, for loss of property under a fidelity insurance policy effective March 1, 1987. The policy insured Dawson's property, including the Almark Mills plant, against loss due to "employee dishonesty."

On November 23, 1988, a burglary occurred and some property was stolen from Dawson's Almark Mills plant. Dawson claims that Wesley Williams, an employee of plaintiff at the time of the burglary, was involved in the crime. As proof of Williams' involvement, Dawson relies on a plea bargain agreement in which Williams pled to the crime of "theft by receiving" on December 10, 1988, certain property stolen from Almark Mills. Dawson also relies on a December, 1988 "cut and sold" report to prove its loss of property as a result of the burglary.

Dawson filed suit seeking to recover the policy limit of $250,000 as a result of an alleged loss of $302,931 which it contends occurred as a result of the burglary. Dawson claims its loss is covered under the policy's "employee dishonesty" clause. "Employee dishonesty" is defined by the policy as follows:

> a.  Employee dishonesty means only dishonest acts committed by an employee whether identified or not, acting alone or in collusion with other persons ... with the manifest intent to (1) cause you to sustain loss and also (2) obtain financial benefit for: (a) the employee, or (b) any person or organization intended by the employee to receive that benefit.

■ Affiliated contends that there is no evidence from which a jury could reasonably conclude there was a loss of goods occurring as a result of employee theft. Affiliated argues that the "cut and sold report" constitutes an "inventory computation," and that Dawson is precluded under the policy from using "inventory computations" to prove "employee dishonesty". The relevant portion of Section D of the policy which excludes coverage for certain losses provides:

> 1.  Additional Exclusions. We will not pay for loss as specified below:
>
> b.  Inventory shortages: loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon: (1) an inventory computation; or (2) a profit and loss computation.

Affiliated now moves for summary judgment declaring that the insurance claim submitted by plaintiff Dawson is not covered under the insurance contract.[1]

As a preliminary matter, Local Civil Rule 3(g) of the Southern District of New York requires the summary judgment movant to submit a statement of the material facts to which it contends there is no genuine issue to be tried, and requires the party opposing summary judgment to submit a controverting statement asserting that genuine issues

---

1. Affiliated removed this case to the Southern District of New York from the Supreme Court of the State of New York pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction.

of fact remain to be tried.[2]  Affiliated submitted its Rule 3(g) statement along with its moving papers, but Dawson did not file a controverting Rule 3(g) statement.  Affiliated argues that since Dawson did not file a Rule 3(g) statement, all material facts in Affiliated's 3(g) statement must be deemed admitted by Dawson for purposes of this motion.  If so, Affiliated would be entitled to summary judgment because Dawson would be deemed to have admitted that it has no evidence of property loss due to "employee dishonesty".

However, Rule 56(e), F.R.Civ.P., provides that when a motion for summary judgment is made and supported by affidavits and depositions, an adverse party's response "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered

against him."  Although Dawson failed to submit a 3(g) statement, it did submit one affidavit by Leonard London, treasurer of Dawson, which sets specific facts about the "cut and sold report" which show a genuine issue of fact.

In the two Second Circuit decisions in which the party opposing summary judgment failed to file a Rule 3(g) statement and the court strictly construed Local Civil Rule 3(g), the opposing party had also failed to submit affidavits or submitted affidavits containing only vague or conclusory allegations.[3]  However, the Second Circuit has implied that strict construction of Local Rule 3(g) may not be required when the party has complied with Rule 56(e), F.R.Civ.P., by submitting affidavits which raise a genuine issue of fact.[4]  In addition, this court in the past has declined to construe Rule 3(g) strictly.[5]  Since the affida-

2.  Local Civil Rule 3(g) of the Joint Rules of the Southern and Eastern Districts of New York provides as follows:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

3.  See Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir.1984) (court deemed admitted facts in defendant's Local Civil Rule 3(g) statement because plaintiff did not file a counter Rule 3(g) statement; however, plaintiff did not file opposition statement as required by Rule 3(g), so facts in defendants 3(g) statement deemed admitted); see also, Woods v. State, 469 F.Supp. 1127 n. 2 (S.D.N.Y.1979) (Weinfeld, J.) (suggesting defect

for failing to submit controverting Local Rule 9(g), now Rule 3(g), could be cured by submission of affidavit provided it does not merely state vague and conclusory allegations).

4.  In King v. New York Telephone Co., Inc., 873 F.2d 36 (2d Cir.1989), the most recent Second Circuit decision dealing with this issue, plaintiff submitted an affidavit opposing defendants' motion for summary judgment but did not submit a Rule 3(g) statement.  Although the district court construed Rule 3(g) to require it to deem as admitted and uncontroverted the facts in defendants' Rule 3(g) statement, the Second Circuit refused to base its decision on strict construction of Rule 3(g).  Rather, the court determined that the facts were clear from discovery that plaintiff knew her claims against both defendants had accrued and then did not commence her action within the applicable statute of limitations period.  Id. at 38 (The court stated, "Regardless of King's failure to comply strictly with the terms of Rule 3(g), we think the facts are clear that King knew....").

5.  See Fernando Posso v. Pan American World Airways, Inc., 1986 WL 7000 *1 (S.D.N.Y.1986) (Carter, J.) (in view of "personal importance" of case to plaintiff, court refused to "render a decision based on an apparent technicality or defective pleading," and proceeded to determine the motion as if the requisite controverting 3(g) statement had in fact been filed by plaintiff); see also, Citibank, N.A. v. Outdoor Resorts of America, Inc., 1992 WL 162926, *3 (S.D.N.Y. 1992) (Mukasey, J.) (noting although Rule 3(g) has been construed strictly, granting summary judgment in favor of plaintiff on the basis of

vit of Dawson's treasurer does controvert Affiliated's 3(g) statement as to the existence of employee theft, Dawson will not be deemed to have admitted this material fact.[6]

■ The plaintiff's affidavit of Dawson's treasurer describes the "cut and sold" report on which Dawson bases its proof of loss by employee dishonesty in a manner suggesting that it is not an "inventory computation". Consequently, a genuine issue of fact exists as to whether Dawson's "cut and sold" report comes within the meaning of the policy clause barring the use of "inventory computations" to prove loss due to "employee dishonesty". *See e.g., Klockner Stadler Hurter, Ltd. v. Insurance Co. of Pennsylvania,* 780 F.Supp. 148, 157–158 (S.D.N.Y.1991) (Conboy, J.) (genuine issue of fact existed as to whether excavated site was "land" or "work" within meaning of policy which covered damage to work but not to land).[7] Thus, Affiliated has failed to satisfy his burden of establishing that no material facts are in dispute. *See Donahue v. Windsor Locks Bd. of Fire Comrs.,* 834 F.2d 54, 57 (2d Cir.1987) (citations omitted).

For the foregoing reasons, Affiliated's summary judgment motion is denied.

defendants' procedural default was unwarranted because defendant's grounds for opposing summary judgment were made sufficiently clear by brief opposing the motion and two affidavits).

**6.** This decision is in keeping with this court's concern in *George v. Hilaire Farm Nursing Home,* 622 F.Supp. 1349, 1353 (S.D.N.Y.1985) (Carter, J.), that "all the material facts set out in 3(g) statements, not being *controverted,* are admitted, at least for purposes of [the summary judgment motion]," for Dawson has controverted the material facts in Affiliated's 3(g) statement. (Emphasis added).

**7.** *See also, Boyce Thompson Inst. for Plant Research, Inc. v. Insurance Co. of North America,*

751 F.Supp. 1137, 1143–1144 (S.D.N.Y.1990) (Goettel, J.) (genuine issue of material fact whether use of property for agricultural and horticultural activities came within policy coverage of "office and related purposes"); *Puro Intern. of N.J. v. California Union Ins.,* 631 F.Supp. 1226, 1229 (S.D.N.Y.1986) (Leisure, J.) (meaning of "water damage" ambiguous on the record; whether policy's limitation on insurer's liability for "water damage" applied to damages as result of "sprinkler leakage" would have to be resolved at trial); *Hartford Accident & Indem. Co. v. Commercial Union Ins. Co.,* 751 F.Supp. 345, 348 (E.D.N.Y.1990) (whether exclusion in insurance policy for "paid employees" was intended to apply to employee on vacation at time of the accident could not be decided on summary judgment because it was genuine issue of material fact).